First, I want to thank each of you for allowing me to file our supplemental brief. I'm very grateful for it. It relates to a case that was decided after the briefing was closed in the case and that I discovered in preparation for today's argument, so I'm grateful for it, grateful for the opportunity to be able to distinguish the Tay case. This Court should reverse and remand this case really for two reasons. The first is the fact that the immigration judge erred when the immigration judge found that Mr. Patel was eligible for a Georgia State driver's license only if he was a U.S. citizen or U.S. resident alien. I'll ask you just a couple of factual questions and it'll help me to understand distinctions if they exist between this case and Tay or Tay or however I pronounce it. What kind of license? Unrestricted driver's license. So what we'll call, is it a fixed-term driver's license? Yes, and that was the same as he had had previously. But do you agree with, I guess, what we said in Tay that only U.S. citizens are eligible for fixed-term five-year licenses and that No, I don't. The regulations that were in place allow an individual to the extent that they are in lawful status in the United States to receive a fixed-term driver's license and that's precisely what Mr. Patel had received previously. That was precisely what he would have been eligible to receive at the time and it's precisely what the board member, Linda Welland, said in her dissent at the Board of Immigration Appeals. There is no . . . the government doesn't contest the fact that Mr. Patel was in lawful status at the time that he applied for the driver's license. He was eligible at that point under the regulations to receive a driver's license from the state of Georgia. So is what we said in Tay about the state regulations only allowing U.S. citizens to get these fixed-term licenses and lawful permanent residents or those in lawful status generally can get a different kind of license and, you know, sort of a variable-term license that attracts their lawful status in the country? Was that just wrong in Tay? Because, I mean, I think that the timeline matches this case fairly well perfectly, right? I mean, both people, Tay and Patel applied in 2008, so I assume the regulations were the same in both cases? It changed actually on March 31st of 2008. Mr. Patel applied in December of 2008. Ms. Tay applied in January of 2008. So there were separate set of regulations and that's what's important. The distinction between the two cases is that Ms. Tay was only eligible for a temporary driver's license. Mr. Patel was eligible for a fixed-term driver's license. So there's an important distinction there. Oh, so, but question, question, question. Sorry. You said you got fixed-term licenses in 98, 05, 09, and 13. How did you get them in 98 and 05 if the regulations, I guess, that applied to Tay would have said no go on fixed-term licenses for lawful status aliens, but yes for U.S. citizens? So how did you get them in 95 and, or 98 and 05? Because at the time there were, regulations had changed in between. There was a period of time for about a year, apparently, under Georgia State precedent where they were only issuing temporary driver's license and it was in the wake of the Real ID Act, which, and the enactment, and the state wasn't sure what to do. They ultimately did issue regulations in March, March 31st of 2008, which then tracked what Mr. Patel received, which was a fixed-term driver's license. Got it. I see. So in 98 and 05 there were regulations in place that allowed lawful status aliens to get fixed-term licenses. And then during the period when Tay applied, those regulations, at least as we described them in Tay, only citizens could get the fixed-term license. But then by the time Mr. Patel applied again in December of 2008, the regulations had sort of swung back in his favor. Is that right? The regulations between the, in Tay, the difference is that there was that regulation change in March of 2008, which changed the regs providing for Mr. Patel's eligibility for a fixed-term driver's license. All he had to demonstrate was that he was in lawful status, which he was, and he had those documents in his possession. The government doesn't contest that, that he was an applicant for adjustment status, which is one of the specific areas that's described under the regulations for eligibility. Got it. So there was, it sounds like in Tay there was this window where the regulations went bad for aliens, basically, in which, so says Tay, can't get a fixed-term license. Unless perhaps you just think Tay is just dead wrong, got the regulations wrong, and maybe you think that Tay is wrong, and I'm happy to be. I do think Tay is wrong. I appreciate you asking, but the thrust of your question is correct. That's the principal distinction. If this court were to look at that for guidance, there's a clear line of distinction between the two cases. Got it. Okay. Again, I'm just, I may be confused. At the time he applied for license, was there not a distinction that Georgia law provided for between applying as a permanent resident alien on the one hand and a citizen on the other, and that as a permanent resident alien you were not entitled to a license for five or ten years? Only a citizen could get that license for that period of time. I thought that 375-32.011 said that at the time when he applied. Have I misunderstood that? Maybe I have. You have. Thank you for asking me that question. The point of differentiation, it was U.S. citizen or U.S. resident alien. If you're a U.S. resident alien, that's the distinction there. What you had to demonstrate was that you were in lawful status. If you're in lawful status as of the time that Mr. Patel applied for his license, he was eligible for an unrestricted license. The same thing as a citizen? Correct. Okay. Now, the duration may have been different. Oh, so that, well, there is a difference then. But not the license. The Georgia state law makes a . . . I'm talking about the timing of the license. How long was the license good for if you were only a permanent resident alien as opposed to if you were an American naturalized citizen? If you were not a U.S. citizen, the period of time that you were eligible for the license would have run or the period of time that you were in lawful status, whatever the document that you demonstrated in Mr. Patel's case, that would have been two years. I thought you just told me that you could get a five-year fixed term license under the regulations at issue . . . the governing regulations at the time as a resident alien. The distinction is a regular license versus a temporary license. Well, I want to know whether . . . I mean, you said the license that Mr. Patel got was an unrestricted license. And I said, do you mean by that a fixed term five- or ten-year license? And you said yes. Forgive me. I didn't . . . that latter part. There is no . . . Ms. Tay was eligible for a temporary license. Mr. Patel was eligible for an unrestricted. Unrestricted, but just means expires when his status expires. Not a . . . what I'll call a regular license. Like I have a license, a driver's license, that expires on a date certain five years after I get it. The license looks exactly the same as the license that you have. It would have a term that would be consistent with the person's status in . . . Well, what he should have done was represent his status, is what you're saying. If he had represented the status, he would have gotten a two-year license. Yes, he would have. He represented he was a citizen. He did not . . . he did not represent himself as a citizen, Your Honor. That's actually part of the petition itself. Mr. Patel testified, in fact, that he represented himself as a person . . . Does that appear on the application? No, we don't. Well, he checked . . . what the application . . . He checked it. Yes, he did check the box saying he was a U.S. citizen. But the bottom line is, under Georgia law, a citizen gets a different kind of license, at least for a different period of time, than a lawful resident alien gets. Different term. The term is different. The benefit is the same . . . The term is different. Is that correct? The term could be different, yes. I thought it's necessarily different, in this case, because here, if he were an American national, he got a five- or ten-year license. A license that was good for five or ten years. Whereas, as a permanent resident alien, he doesn't get a five- to ten-year license. What he gets is a license that is only bounded by the period comprehended by his resident status. Right? Yes, with explanation, if I may. Well, but before you give me the explanation, and I'm happy to hear it, I just want to understand . . . So, if I'm applying for a license, I'd much prefer to get the kind of license an American citizen gets, than the permanent resident gets. Because, in the context of this case, he was only good for two years, whereas, an American national, he was good for five. So, the distinction I want to make sure that you understand is, it's not . . . Just to be clear, the line of demarcation is not U.S. citizen. It's U.S. citizen or U.S. resident. An alien receives the unrestricted license. A person who has a green card, in essence. Mr. Patel did not have a green card. He was an applicant for a green card at the time. He falls into the category of individuals who is eligible for the license at the time, for the period of his authorized stay in the United States. In that case, it was another two years. What does a license look like? Does it tell the police officer that it has that limitation? It has no distinction . . . It looks exactly like the citizen's license, does it? Yes, it does. There's no distinction between the license that Mr. Patel receives and the license . . . They're both the same on the face. They are. All right. So, I'm from Alabama, but mine has an expiration date. Do Georgia licenses have an expiration date on them? And if so, what does his say? They do have expiration dates. And so, what does a resident alien say? If it's open-ended. It's like a floating interest rate. I mean, so what does it say? Forgive me. You said resident alien. I'm sorry. Yeah, yeah, yeah. That's the point where I think there's a stumbling block. And I just want to be clear. The line of demarcation, if you're a U.S. citizen or U.S. resident alien, you're eligible for the license. And the presumptive period is the five years. If you are not a U.S. citizen or U.S. resident alien, then you're in this other category, which . . . Is there an expiration date on the license that he got? Correct. No, there wasn't, because he got a citizen's license. Would there have been? If he had testified truthfully as to his status, what does that license look like? What does the expiration date say? The expiration date on that license would have been two years from the date of the application in December. Let me read you what the rules say, and then you can help me. Yes. I'm reading now 375.3.2. Any person who is not a citizen of the United States, who provides proof of lawful presence in the United States . . . license, may be issued a temporary license permit or special identification card. Such temporary license permit or special identification card shall be valid only during the period of time . . . of the applicant authorized to stay in the United States. If the person's immigration documentation does not bear an expiration date . . . he or she shall be issued a temporary license permit or special ID card valid for one year. I believe that was the regulation that was in force at the time of Tay. It was not the regulation that was . . . Well, I'm reading the wrong reg. I believe so. The regulation that I have is under Georgia Annotated Code 375-32-01, which is the . . . 375-32-01.1. That's what I read, and I understood that to be in effect in December of 2008. Am I incorrect about that? The provision of the law . . . I just want to know, am I incorrect about that? Yes, but there was a prior version of that, which was at issue in Tay, and that's . . . What I just read, was that not in effect at the time that Patel applied for a license? Yes. So, I got it right. I read it to you accurately. I don't believe the text was accurate. What I think was accurate was the citation to the law itself. I think that's part of the problem here, is that we didn't have any of this in the record with the immigration judge below. We didn't have the opportunity to . . . Let me come at it in a slightly different way. The license I get as a permanent resident alien, or someone who has lawful presence in the United States, but who is not a citizen, is different in terms of duration than the license an American national gets in Georgia. Is that correct? Yes, it is. How does the person issuing the license know how long to make the term for, or put the expiration date? Because a lawful permanent resident has no expiration date. Do you agree with that? I don't, Your Honor, only because the green card does have an expiration date on the green card. On the green card? Yes, sir. But suppose it's not a green card. If it's not a green card, then the individual would present their documents to demonstrate that they have legal status in the United States. If there is no specific term on the documents, then they're issued a temporary driver's license under the code. That's good for how long? I'm sorry I keep asking the same question. The regulation states that it would be valid for one year. And if there's an expiration on the immigration document that they're giving the License Bureau, what's the expiration? The expiration date would be the expiration of whatever the document that the person presented. Could it be more than two years then? Yes, it could. Yes. The point I want to make here, though. And if he had presented the appropriate document, what would it have been? It would have been for two years from the date of his application. And the point I want to make to the court is that the benefit, though, that he's seeking is the benefit to drive. That's what is adjudicated at the outset. What then occurs separate from that, really a collateral from that, is the period of time on the license itself. But the application is the benefit to drive itself. And that, there's no distinction between being a U.S. citizen or somebody who is in legal status in the United States, which Mr. Patel was. The testimony is, and it's conceded by the government, that he had lawful status in the United States. And like in Hassan, the Sixth Circuit case, he had applied for a driver's license previously on two previous times before that point. So Mr. Patel, when he walks in there, as he had previously presenting, as he testified, the documents to support the period of time his lawful status in the United States was eligible for the driver's license. And he presented the document? Yes, he did. Okay. And he testified. But also said he was a citizen. He also checked the citizen box. He checked the wrong box. You know, we, there's no evidence. He checked the wrong box but presented the right thing? Is that what you're telling us? Yes, he did. He presented his document. So the person receiving the application should notice that there's an error here. A person that looks at the application would have, had they, you know, relied upon the U.S. citizenship, there's a series of documents they need to require, including a birth certificate or a passport. Mr. Patel, there's no evidence at all that Mr. Patel. No, but did he present, he presented the immigration document? Yes, he did. Well, that's what I'm saying. The person who issued the license would have known there's something wrong. He's got an immigration document for a period of time, and he says he's a citizen. That can't be, can it? That is correct. It can't, it wouldn't be both. That's right. So we could have had a case where he got the license. He should have gotten pursuant to the documents but checked the citizenship box. Yes, and the testimony is Mr. Patel testified that he did it in error at the time. An error of checking but not of presenting the document. Correct. Okay. And there's no evidence at all that Mr. Patel submitted anything to the examiner at the board to support citizenship at all. There's no testimony. But he submitted the immigration document. Of course, you have the other problem here that the immigration judge squarely finds that Patel falsely claimed citizenship. He disbelieved your client. And I agree that that, you know, we're on abusive discretion standard there. I think the case that should inform, Judge Marcus, your review is the Hassan case. And in Hassan, the Sixth Circuit held, I think convincingly, that the fact that the individual had applied for two previous applications for the loan, in this case, in that case, an SBA loan, was significant evidence that he was simply taking the action again that he had previously taken. And there is no other evidence at all that Mr. Patel did not submit the documents that he indicated. The only evidence there is is the checking of the box. And that's what the immigration judge relied upon in addition to an asylum application which Mr. Patel had filed years before. That was the basis for the immigration judge's determination. What you're telling us, we don't know whether they issued the license on the basis of citizenship or on the basis of his immigration status. That is correct. We don't know for sure because that evidence was not in the record below at the trial court. But what we do have are the previous licenses that Mr. Patel received. Those were put before. Right, but at the end of the day, the IJ finds, I don't believe him. He says it was a mistake, it was an accident. This is no mere accident. He's not credible. And he offers three reasons why he disbelieves your client. He finds him not to be a credible witness and he finds his justification for the representation to be unconvincing. That's the state of the record. That is the state of the record. And the point I want to make to you, Judge Marcus, is two things. Number one is that there is no evidence at all that contradicts Mr. Patel's testimony at trial that he did present the appropriate immigration documents. And importantly, if this court finds, as it should, that this was not a benefit. And importantly, we look at the purpose of the statute. Remember, the purpose of the statute is . . . Well, the IJ points out that he claimed to have arrived in the United States in Newark, on a previous immigration form, but testified here that he entered the country through the Mexican border. He first testified . . . this is what the IJ said . . . He first testified he submitted only his work authorization card in conjunction with the 2008 license application, but later testified he submitted both the work authorization card and his formal license. And he testified that he provided his alien registration number, but the 2008 application contained no alien registration number. That's what the IJ cited to say, here's why I don't believe him. Well, just to be clear, what that distinction comes down to is that . . . Well, there were three distinctions he drew. The first is that he didn't present his previous driver's license. You have to present your previous driver's license in order to get a new one. So, that distinction, I think, is without a difference. What about claiming to have arrived in the United States in Newark, in New York, on previous immigration forms, but testifying he entered through Mexico? That is correct. Mr. Patel admitted at the trial, this was many decades ago, that he had entered the United States unlawfully and that he had misrepresented that on his application. Potentially misrepresented. On the . . . The district court, I mean, the finder of fact said he lied, and here's why. True, but my . . . Am I obliged to accept that, am I not? Well, here's the thing. It was attenuated. It was something that had occurred many years before, unrelated to this application itself. The application itself, Mr. Patel testified to, and I get where you're coming from. I understand . . . I'm just asking the question. The IJ found, I don't believe him. Here's why. There's certainly some evidence in this record that would support that finding by the immigration judge. Maybe I would have ruled differently if I were the trier of fact, but am I not bound by that? Not for this reason. There was no contemporaneous evidence that contradicted Mr. Patel directly. This notion that somehow he didn't submit his driver's license. We know just from judicial notice that you have to submit your driver's license, the former one, in order to get a new one, and that this notion about his alien registration number, it is on the application . . . I understand. . . . work authority document. Thank you. Thank you. Mr. Stewart? So, can I ask you just a question before we get going? We now, I think, all on the same page, and I've contributed to the confusion because I've been using the wrong terminology. But, for someone in Mr. Patel's status, I'm not even going to try to characterize it for fear of screwing it up again. But, for someone in Mr. Patel's status, he was eligible under regulations applicable at the time, Georgia state regulations applicable at the time, for a license, not a fixed term license, but a license that tracked his lawful status in the country. Is that correct? Your Honor, I think it's unclear. I'm not certain of the answer of that. And that part gets to, I think, the fundamental theme that I want to pitch to Your Honor, is that I think ties together a lot of the questions and answers, and hopefully provides a good, kind of the right framing to come at this case. Okay, yeah, give it away. If I can give it . . . Thank you, Your Honor. May it please the Court, I'm Scott Stewart on behalf of the Attorney General. The Board of Immigration Appeals was correct to reject the . . . uphold the immigration judge's decision and to conclude that Mr. Patel was not entitled to an adjustment of status here. I think the key theme, Judge Newsom, that I want to emphasize here is one of burden. We've heard it different times. My friend on the other side has made concessions to the effect of, we didn't have any of this in the record. You know, there's an absence of evidence, you know, going against his lead client, that sort of thing. But the issue of burden pretty much ends this case on appeal. Under 8 U.S.C. 1229 A.C. 2A, quote, if the alien has the burden of establishing, if the alien is an applicant for admission, that the alien is clearly and beyond reasonable doubt entitled to be admitted and is not inadmissible under Section 1182. So he has a burden of showing clearly and beyond a reasonable doubt. And whatever the answer is to your question right there, Your Honor, he has not shown that. He has not shown that it's clear that he would have gotten the same benefit, that he would have gotten both the license and for the same term as anyone else. But I guess like as for the same term, that's like the nub of the whole dispute. He says, you know, the benefit here is just driving generally, not driving for a particular time. You want to say the benefit is driving for a particular time. So to me, that sort of does matter what the regulations provide. Does someone in Mr. Patel's status, is someone entitled to a driver's license that guarantees that person a right to drive for a particular time or is it sort of this open-ended kind of squishier license that expires when your lawful status in the country expires? Again, I'm not certain of that, Your Honor, because it's not clear to me what form of the rule was in place at that time. And also there's some dispute as to whether my friend mentioned that there was a different regulation that applied, you know, at the time he applied. That's what I wanted to zero in on. I read him something from the Georgia regulations that I thought was in effect in December of 08 when he applied. And I read it to him and he said, no, that's wrong. That wasn't in effect at the time. What was in effect at the time? Obviously, we take notice of what the Georgia law is and we look at whether there is a difference, whether you apply for a license as an American citizen or you apply as someone who's a permanent lawful resident. The difference in here is in the duration. In both cases, you get to drive in the state of Georgia. It's for how long before you've got to go back and get a new one. And I'm just trying to find out what the law was in Georgia, if you can help me with that. I don't have a firm answer for you on that, Your Honor, but at page 20, footnote 5, we do sort of say why there is some doubt about this. At page 20, footnote 5 of our brief in the case, we explain that there's some doubt in how the REAL ID Act's enhanced requirements for obtaining driver's licenses as to when it took effect in Georgia. States were able to seek extensions before they had to apply those. The amendments to the code indicate that the same regulation at issue in Tay where there was a January 2008 application for a license may well have been in place in December 2008, as was the case here. So again, what I think it comes down to is we just have a failure of proof that he would have had the benefit of this law that would have enabled him to get a license. And that, again, is a firm bar for him, just the inability to show that he would have gotten that. I would also add something here, Your Honor, that on the record here, there are two reasons why the petitioner fails the objective materiality prong of the Richmond test. The first is that he just hasn't shown that absent the citizenship representation, he would have gotten this benefit. He says, oh, I had my employment authorization document, I had this other thing, that would have been enough. But the record doesn't compel the view that he actually submitted those and how the Georgia officials would have reacted to those, how the state of Georgia would have treated those. As we say in that same footnote of our brief, the evidence best shows that this regulation is not the one, or it supports the view that this is not the one that the Georgia officials were applying because so far as this record discloses, the only thing that Mr. Patel came in with was his old driver's licenses. And we don't know what representations he made on this record to get those licenses. He hasn't shown that he came in with his EAD at page 164 of the record. The immigration judge casts doubt on that. It says that what the evidence actually suggests is that all he had was his old driver's license. But can I ask you a question? I mean like how much sort of record evidence do you need? If he's right, and I can't quite tell where he is, and we can ask him again on rebuttal sort of with respect to the text of the regulation, but if he's right that there is a regulation on point in Georgia for this period of time that says if you are someone who has the status that Mr. Patel has, you are entitled to the same fixed term five-year license that U.S. citizens are entitled to. I mean wouldn't that be enough? Like what more record evidence would you need about how the Georgia DMV folks would have treated the application? I think that this case contains more doubt than maybe the average case, maybe more doubt than – Well, I understood him to concede that there's a difference in the duration. Correct, Your Honor. And just taking that concession again, we get to the – that's kind of a second – But I understood your colleague to say I agree that there's a difference. You get five or ten years as an American national. You get the period of time you're here lawfully as a lawful resident alien. At the time, it was different. There's a different benefit being conferred by the State of Georgia depending on status. In both cases, you can drive, but you can't drive for the same period of time. That's the import of Tay, Your Honor, and I think, again, just applying that – Right, but he says Tay is different because the rules changed from the time Tay came out, applying it to that fact pattern from the rules that governed in this fact pattern. But in any event, they didn't change insofar as there still was a difference in the timing. I think that's right. That's what I understood. That's what I took from him. It could be conceded, Your Honor, and that just sort of backs into the teaching of Tay that, yes, maybe you get to drive, but there is some tangible benefit in getting to drive for a longer term. I mean, say you have Tay itself where the terms are vastly different. Say you get to drive for two weeks versus five years. I mean, yeah, you get to drive for that same two weeks, but that's a materially different benefit. And if your misrepresentation as to your citizenship is what gets you that difference in benefit, that's significant. But, again, even if you were not fully convinced of that, Your Honor, just applying the simple burden framework here about the petitioner's obligation to show that he clearly and beyond a reasonable doubt showed that there's no benefit or burden, he surely has not done that. He's conceded that there's not evidence in the record on this and that there are other absences of evidence that kind of bear on other questions here. And it's that materiality, that burden that alone is enough for this court to deny the petition for review on. Can I ask you a quick question about your adversary was having this conversation with Judge Marcus about the standard of review that would apply to the judge's factual, the immigration judge's factual findings and credibility determinations. You haven't made the argument, but is that something that we even have jurisdiction over? Do we have jurisdiction to review the BIA's determinations relying on the immigration judge's credibility findings in a case that is fundamentally about adjustment of status, which is a discretionary form of relief? I thought that there were statutes that said courts of appeals, you don't have jurisdiction over these things. And then we've got a case law gloss that says true as to facts and credibility determinations, no jurisdiction. But as to constitutional questions and pure questions of law, we're going to exercise jurisdiction over those. So do we even have jurisdiction to consider the credibility determinations and factual findings, either generically or as they apply to the first subjective intent element of Richmond? I mean, I don't want you to gobble up all your time if you don't know. It's fine. I mean, the discretionary review bar is a very important question, Your Honor, which is part of why I'm giving it appropriate pause, because I don't want to step in a misdirection or anything on that. Because it is some of these discretionary... Suppose the BIA's construction of a statute under Richmond is wrong, in which event, and materiality is not a part of the statute, simply represent that you're a citizen for any purpose, you're inadmissible. I think... I mean, that's an interpretation of the statute. Do you agree? It would be... Yeah. Well, putting aside, yeah, if Richmond were wrong... to be a citizen of the United States for any purpose is inadmissible. That is a reading of the statute. Would you agree? It is a reading of your statute. It has nothing to do with materiality or anything else or whether you got the license or not. I think that's right, Your Honor. You still, I think, have the subjective intent. I think this is what Judge O'Scanlan's special concurrence was going to. Just... If we read the statute differently from Richmond, from the BIA in Richmond... Yes, Your Honor. Then the ALJ made a legal mistake and so did the BIA. But the petitioner wouldn't benefit from it because he didn't make the representation for a purpose. End of sentence. I think that's right. I mean, it would make this an even easier petition. Do you think it might be appropriate to solicit more briefing, a letter of briefs from you, to decide whether or not the BIA is not entitled to Chevron deference in its interpretation of the statute? Your Honor, I'd say the government, we'd be happy to do additional briefing. Here, I would say that I think there's good counsel in following Judge O'Scanlan's lead when he observed in his special concurrence in Tay that, look, this case doesn't present a good situation to, you know, address the Richmond's validity, whether it's a sound reading. What case would? I think a case where, in the first instance, it was... You're always going to have a misrepresentation. Correct. I'd put it this way, Your Honor. Richmond... The BIA would have to change its interpretation. We'd never get the case. Ever. You always have a case of a misrepresentation for some purpose, and then the ALJ and BIA get to materiality. How would we get the case? And they would say the government... Because the burden's on the petitioner, so the government has to show anything. You follow me? I think so, Your Honor. I guess what I... The interpretation benefits the petitioner because he can show no materiality. There would be that possibility, Your Honor, but suppose that a petitioner challenged the lack of a materiality requirement, saying that that's an invalid reading of the statute. I mean, that could bring it up here some way. I do think here that whatever the soundness of Richmond... I suppose if he's made the claim down there, before the ALJ, that he doesn't have to show materiality at all. But he shows that he made the representation for a purpose, and he's dead in the water by his own admission, isn't he? Well, I mean, it could be possible. I mean, again, Your Honor, I'm just hypothesizing here. I'm not saying this is... I know, but I can't understand... But say the government took it... That's why... My view would be to have you, both sides, have a little letter brief because this is never going to be reviewed, in my view, this interpretation of the statute. And let's assume Congress never intended what the BIA wrote in Richmond. That Congress meant anybody who misrepresents himself as a citizen for any purpose is inadmissible. I'm just trying to find out what the position of the United States is. I read the red brief. In the red brief, you tell me the standard of review, and among other things, you cite Chevron. And then when you get to your discussion on page 17, Roman numeral 4, you cite Richmond. And you tell me in Richmond, in precedential decision, the board explained there are two requirements to the analysis of a false claim to citizenship under the statute, and then you apply that. I take it the position of the United States of America is that Richmond is entitled to Chevron defense. Judge Schofield is asking you the question of why would it be entitled to Chevron defense if the text itself is clear as a bell? We would owe no deference under Chevron. There's no ambiguity. There's no reason why we would look at it. And indeed, if we didn't look at it through the prism of Chevron deference and rejected Richmond, you'd still win. It would just mean that the applicant had an even taller burden to meet, which he couldn't meet in this case. So I just want to know what is the position of the United States? I took the position from the red brief to be Chevron deference applies here. There's ambiguity. Richmond we should defer to for that reason. Richmond lays out the way we look at the case. If you look at it under Richmond, he loses. Is that your position? I don't think we've taken that firm of a position, Your Honor. And I want to be let me see it. Let me see if I don't know. What is your purpose? Well, you mean not quite? Well, Your Honor, you've taken it, but not quite. Well, I'll put it this way, Your Honor. In Tate at Slip Opinion, page three, the court said, look, both both Tate and the government apply the Richmond standard without discussing whether it's ambiguous or whether the interpretation is owed Chevron deference. We do cite Chevron. We don't go into, you know, a meaningful defense of it. I don't want to push back against, you know, much against the I just want to know what your position is. What is it you think we ought to be doing here? I know you think we ought to be affirming. The question is why? Do we affirm using Chevron deference and applying Richmond? Or do we just go to the statute, discard Chevron deference and say the statute's clear, there's no ambiguity, we don't really care what they said in Richmond. We can read the statute at least as well as they can, and we read it differently. In which case all this conversation about two years, temporary, five years, ten years is irrelevant. Do you agree with that? It could potentially. If we affirmed on the ground that making misrepresentation for any purpose, period, is the way the statute reads, then all this other stuff is irrelevant. Subjective state of mind, objectivity, et cetera, is all out. I'm not certain about the subjective, Your Honor. Well, let's put it this way. I take your point about the objective. I suppose you could have a mistake. Right. I guess what I'm just saying, Your Honor, is that it is an important question. I just don't mean to push back on my answer. All right, so let me ask you a question just one more time. It's a real simple question, and if your answer is I don't know, just tell me that. Is it the position of the United States that we ought to be deferring to Richmond, giving it Chevron deference, and applying Richmond to this case? That's how you brief it. That's how you argue it. Is that your position? Or is your position, no, it isn't entitled to Chevron deference? Our position at this stage, Your Honor, and I'm going to say this. It's a very simple question, counsel. Your Honor, it's a compound question. I can't answer a straight up yes or no to it, but I'm going to try to answer it. It's a compound question whether we ought to rely on Richmond and give it Chevron deference? Your Honor, my position is, is that the parties have not questioned the validity of Richmond. They've both taken it as a given and they've applied it. You haven't briefed the issue. That's why I suggest letter of memorandum. We would be happy to do so, Your Honor. Think about it. Right, Your Honor. What I'm saying is I can't say here. Because you're expressing it. We have the view, but not quite. You need to run it up the flagpole, right? I mean, we understand that. You need to run it up the flagpole. What's the position of the United States? You're not sure as you're standing here at the podium. I can't say flat out. You can't commit the United States here right now in this courtroom as to your position. You need to run it up the flagpole. Judge Joe Flatt has said, why don't you guys brief it? We can do that, Your Honor. Yep, that's right. I think we have your point. Thank you, Your Honor. Well, was there anything else you'd like to say? Do you have any thoughts? Have you said something in writing? Yeah, I just want to, your point about, and I just want to be clear on it, is that you mentioned a scrivener's error. I mean, we don't have to answer that question. Well, we would because if it was, there was. No, all I'm saying is depending on what we do, it may or may not be important. That may be an issue. Well, certainly whether or not somebody did it intentionally or not. Whether somebody actually did something is a fact question. It is a fact question. Okay. I'm happy to answer any other questions. I'm sorry. I hate to do this. I know you've been up here long enough, but what's your position about whether we have jurisdiction to consider the BIA's factual determinations and credibility findings relying on the IJ under the statute? I believe that you do. It's abuse of discretion standards. I agree. We have that exacting standard to meet. We need to show that the IJ abused his discretion under the circumstance, and I believe in this case he did, for the reasons that I've gone over in that the areas that he cited where he says that Mr. Patel was not accurate or there was inconsistencies in his testimony simply are, if you look at the record, are consistent. He submitted his documents to demonstrate his status. He submitted his employment authorization document, which had the specific alien number on the document itself. Yes. We'll give you, gentlemen, 15 days to submit reciprocal letter of memoranda and the clerical issue of a bulletin. Thank you, Your Honor. I believe what the court is saying on the issue of whether or not the regulation or the statute is afforded Chevron deference. That's right. I understand. The Richmond is afforded Chevron deference. Whether the BIA's determination in Richmond . . . Should be afforded Chevron deference. Correct. That's right. Because there's an ambiguity in the statute. Yes. Correct. I understand. Thank you, gentlemen. You're welcome. We'll move to the last case.